HENRY C. CLARK & others *vs.* CITY OF PROVIDENCE.

If the owners of land make a plat with lots and streets marked out upon it, and afterwards sell lots upon the plat, referring to it, the grantors are bound, as to the grantees, to permit a street so platted, upon which lots are sold, to be open, not only to the grantees, but to the public.

The plat and agreement of the Dorrance Street Association, and the deeds made by them, held to make the complainants the owners or lessees of the fee of the street laid out upon the plat, to the centre thereof, against their respective lots.

An injunction will lie to restrain the city of Providence from laying a sewer through private property, when claiming to do it under a statute which allowed them to lay sewers through public streets. But *held*, that in the case at bar the city would be allowed to have an issue to a jury, to determine the question whether the land through which it proposed to lay the sewer was a public street.

POTTER, J.[1] This is a bill in equity with a motion for special

---

[1] DURFEE, J., being interested, did not sit in the trial of this case.

injunction to restrain the city of Providence from laying a new sewer through a strip of land between the head of Dorrance Street Dock and Dyer Street, which is claimed by the city to be a public street, and which is claimed by the complainants to be their private property, subject to be kept open for private ways, and other uses and purposes.

The city claim the authority under an act of the legislature, authorizing them to construct sewers in the public streets of the city. The city denies the title of the complainants to the land, and claims that it is a public street; and also maintains, on general grounds, that it is not a proper case for an injunction.

The complainant Clarke holds by deed or lease lots 14 to 21 inclusive, on the northeast side of a strip, of land marked as a street on the plat of land of the Dorrance Street Association. The complainant Bucklin owns lots 60, 61, and 63 ; and the complainants Albert Dailey & Co., lots 57 and 59, on the southwest side of what is marked on said plat as a street and dock. And said Bucklin owns lot No. 33 on the Dyer Street plat, which lot is bounded on said Dorrance Street. All of said land is between Dyer Street and the river, and all except said lot 33 was part of said Dorrance Street Association land.

The Dorrance Street Association filled up a portion. of a tract of mud flats and tide water, which extended up to Weybosset Street. This portion was platted and lotted in 1827, and in 1829 these proprietors made an agreement, to which we are obliged to refer, in order to ascertain the ownership of the fee of a part of the strip claimed by the city to be a public street.[1]

On this plat certain lots are numbered and marked, and along the middle part is an open strip on which the words " Dorrance Street " are marked, which is, for the purposes of this argument, admitted to be a street down as far as Dyer Street, but which on the plat extends to the head of the dock.

The agreement provides, secondly, that all the land, wharf, and docks lying southwesterly of the store lots numbered one to thirteen inclusive, and between them and the northeasterly side of Dorrance Street and Dorrance Street Dock, so called, and

---

[1] The plat and agreement can be found in the report of the case of *Clark* v. *Peckham, City Treasurer*, 9 R. I. 457.

extending from the river to the street, running from Dorrance Street to Central Street, shall remain open for the use of said lots, and the fee of the open land and docks shall belong to the owners of said lots as tenants in common. This paragraph does not affect the present case, except so far as it may help to construe other parts of the instrument.

Fourthly. That the lots from number 14 to 21 inclusive shall extend from Dorrance Street to Central Street, &c., and that a strip on the northeast side of said lots shall remain open. No provision whatever is made as to that portion of the strip of land on the west side of said lots, marked as Dorrance Street, as to whom it is to belong, or (except so far as is to be inferred from the plat) that it is to remain open.

Fifthly. All the streets, lands, docks, and wharves on the southwesterly side of Dorrance Street and Dorrance Street Dock, not marked as lots, are to remain open and unincumbered for the purpose of passing and repassing upon and over the same; and the fee of said streets, lands, and docks is to vest in the owners of adjoining lots as part of their said lots. This provision applies to lots 60 and 61, which would thus include the fee of the open land to the dock.

If we construe this latter provision (the fifth), when it speaks of Dorrance Street, as meaning the centre (and which construction may be necessary to reconcile different parts of the instrument and make it consistent), then, by force of the agreement itself, lots 60 and 61 would (as against the proprietors) extend to the dock; and lot 60 then would extend to the middle of the strip marked for a street. If, however, we construe this paragraph as only providing for land on the southwest side of the outer west line of the street and dock, then, while 60 and 61 would extend to the dock, no provision would be made for that part of the strip in front of 63. Lots 14 to 21 on the Dorrance Street plat, and lot 33 on the Dyer Street plat having been sold as lots or plats bounding them on a street, and most of the deeds bounding them on Dorrance Street might, even before the strip marked as a street became a legal highway, be construed to convey the fee to the centre thereof.

The mere making of a plat with lots and streets upon it, unaccompanied with opening or other act or declaration, would not

make such streets public ; nor would it of itself amount to a dedication ; but if the owners afterwards sold lots upon the plat, referring to it, thèn the grantors would, as to the grantees, be bound to permit a street so platted, upon which lots were sold, to be open not only to the grantees but to the public ; for the fact that it is to be a street is generally taken into consideration in the sale, and adds to the value of the lots, which few would purchase if they were to be entitled only to a private right of way ; and the grantees, taking by such plat, would be bound by it in like manner as to the other parties.

This is the mode in which additions to our cities are generally made. It is contemplated that the strips marked as streets shall in time become highways. And the same reasons of public policy which have led to the decisions that, as a general rule (with some exceptions), a deed of a lot upon an acknowledged highway is presumed, in the absence of facts or declarations to the contrary, to carry the fee to the centre, would apply to a case of the sort we have described. Upon any other principle, whenever through some legal defect a supposed highway was decided not to be a highway, the decision would have a retroactive effect upon the construction of all the deeds of land bordering upon it.

We do not mean to say that this presumption would apply to every case of a sale of a lot bounded upon a way used by the grantor merely for his private purposes. In many such cases the presumption might be that a mere private way or way of necessity was intended. Such cases must depend on their own circumstances. And though the platting of a street by private owners, and even the sale of lots according to the plat, would not make it a highway so as to bind the public to repair it, yet it would undoubtedly affect it with the properties of a public street, so far as the parties themselves are concerned. And in the present case the circumstances are stronger. It is not the case of an individual owner platting and then selling a lot or lots by the plat, but of a number of tenants in common platting with a view to partition and making a written agreement for that purpose.

The Court of Appeals of New York in *Child* v. *Chappel*, 5 Seld. 258, have well expressed the law and common sense of these cases. " The right to use and to have used by the public the streets laid down upon the map [becomes] an appurtenance to

the parcel of land granted. . . . . As between the original owner of the land and the several grantees of parcels thereof, these rights are fixed, but until the public has in some way become a party to the transaction, the whole arrangement is subject to be rescinded by the joint act of the original owner and of all those who own and have the right to represent the land sold. . . . . In other words, there might be impressed upon this mass of private property, by private contract, rights, in the strictest sense of the word, analogous to the ordinary public rights of highway, and yet these rights confined to the owners and representatives of the land forming the subject of the compact, and .liable to be ended and rescinded by the mutual consent of all who have an interest in the subject.

The complainants are, therefore, in our opinion, the owners or lessees of the fee of the street strip to the centre thereof against lots numbered fourteen to twenty-one inclusive, and number sixty-three, upon the Dorrance Street plat, and lot numbered thirty-three on the Dyer Street plat.

But the respondent contends that even if the complainants own the fee of this way, it has become a legal highway by dedication and acceptance, or by twenty years' user. To make this claim effectual on the ground of a dedication, they must show an acceptance by the public, or they must show a user for a period of twenty years.

Much evidence has been put in which we do not think necessary to recapitulate, but all going to show that there is a serious controversy upon the subject.

That, if there be no legal right in the city, the injury to the complainants' business would be serious, can hardly be doubted. The city are here proceeding under a statute (Statutes, chap. 807, passed at the January session, 1869, of the general assembly) which authorizes them to lay sewers in a public street. If this be not a public street, they can only take it as private property for public uses under other provisions of law. This is the important question and which we think ought to be settled before the city proceed. It has been a long time in controversy. The city have had and now have the choice of several ways to proceed and settle its right to this strip as a street, and thus put the question at rest. We think that until a hearing or further order

the injunction should be granted so far as relates to the construction of the proposed new sewer ; but as the question is an important one, and is said to involve a contemplated improvement of great importance to the city, that the city, if they desire it, should have the right to have an issue made to a jury forthwith, to try the question whether or not this is a public street.

*Terms of decree postponed to a subsequent hearing.*

After the rendition of the foregoing opinion the cause again came up before BRAYTON, C. J., and POTTER, J. (DURFEE, J., being interested and not sitting), on the motion as to the form of decree to be entered when the decision of the court was delivered by

POTTER, J. The city has no right to enter upon this strip of land under the statute by which they proceed, unless it has in some way become a street; and an injunction, conditional or otherwise, is proper under the circumstances. The court have already decided, in substance, that the agreement, plat, and sales under it, made an offer of dedication of this strip of land as a street, and certain spaces were to remain open, and no one proprietor could close up or incumber them without consent of the others. As the city itself now owned one of the lots, it practically amounted to a permanent offer of dedication to the public, and one of the questions would be, whether this offer had at any time been accepted by the public. It is evident that, from the necessities of the city, this strip must become a street in some way. The question of acceptance or twenty years' user may be tried by an action by the complainants ; or the city may have it tried by procuring an indictment, or by an issue in the present suit.

The court think that the complainants are entitled to a stipulation that the city will proceed with all reasonable dispatch to settle whether this land has already become a street by dedication and acceptance, or by user, and if decided that it has not, then that they will either lay it out as a street or proceed to take the land as private land under chapter 993 of the Statutes. This is necessary to protect the rights of the complainants. The order for injunction will be granted *nisi* — unless the city make these stipulations and give bond to pay damages.

*Parkhurst*, for the city, said that the city had already taken

measures to declare the land a public highway by user, and also appointed a committee to lay the sewer through it, if private property ; but the court said the city might suspend these proceedings at any time, and leave the complainants to further litigation, if there was no stipulation.

*Hart*, for the city, said they were ready to comply with the conditions. *Decree accordingly.*